## Commonwealth v. Miller

*Joel Goldstein, assistant district attorney,* for the commonwealth.

*Michael J. Malloy,* for defendant.

SURRICK, *J.,* October 22, 1986—The facts giving rise to the instant case are as follows. On February 23, 1983, a criminal complaint was filed by the Department of Public Welfare, Commonwealth of Pennsylvania, against defendant, Danita Miller. The complaint alleged that from February 10, 1978, through May 12, 1980, defendant illegally received public assistance in the amount of $4,777.09 and food stamps in the amount of $1,298.00 for a total of $6,075.09. It alleged that defendant received this public assistance and food stamps by making false statements to caseworkers at the Delaware County Board of Assistance during three separate qualification or requalification interviews.[1] The complaint further alleged that during these interviews, defendant was informed that it was her responsibility to report any income to the caseworkers as a requirement of eligibility for continued public assistance. It alleged that defendant continually advised her caseworkers that she had no outside income during the entire period of overpayment when, in

---

1. These interviews took place on September 28, 1978, April 18, 1979, and November 5, 1979.

fact, she was gainfully employed during this time.[2] Finally, it alleged that on February 10, 1983, a special investigator from the D.P.W. interviewed defendant and she admitted not reporting her employment to her caseworkers on the above occasions.

After a preliminary hearing on April 6, 1983, defendant was held for court. On April 26, 1983, defendant was arraigned on Information no. 1318A-83 charging obtaining public assistance and/or federal food stamps by false statements.[3] On November 4, 1983, defendant entered a plea of guilty to Information no. 1318A-83.[4] At the time of sentencing, defendant admitted that she had, in fact, committed welfare fraud by making false statements concerning her outside income, as alleged in the complaint. However, she took the position that she should not be required to make full restitution for all of the monies she received as a result of these false statements. Rather, she argued that she should have to make restitution only for those monies she received during the period of the statute of limitations. Since the Welfare Code in section 481(c) provides that "there shall be a four-year statute of limitations on all offenses under this section," defendant argued

2. During the period of time in question, defendant was employed by Dr. Morris McCray, 2401 Edgmont Avenue, Chester, Pa., and earned gross wages of $10,200.78.

3. Specifically, defendant was charged with violating the Public Welfare Code of June 13, 1967, 62 P.S. §481(a), as amended, July 9, 1976, P.L. 993, effective September 9, 1976.

4. Originally, Information no. 1318A-83 charged defendant with illegally receiving public assistance in the amount of $4,777.09. However, at the time of the entry of the guilty plea, the commonwealth was granted leave to amend the information to include an additional receipt by defendant of $1,298 representing the amount of food stamps that defendant illegally received during the subject period.

that restitution could be ordered only for the $3,721.91 illegally received between February 23, 1979, and May 12, 1980, and not for the $2,362.18 illegally received from February 10, 1978, to February 23, 1979. We rejected this argument and defendant was sentenced to a one-year period of probation under the supervision of the county probation office and ordered to make restitution in the amount of $6,075, said amount representing all of the monies which she illegally received from D.P.W.[5]

Thereafter, defendant filed a timely motion to reconsider and/or modify sentence. The motion again alleged that defendant should be responsible to make restitution only for monies received during the period of the statute of limitations. It also alleged that the sentence imposed would require defendant to make restitution payments beyond the maximum period of imprisonment which could be imposed without taking into consideration defendant's ability to make restitution within the prescribed probationary period. This motion was denied and the instant appeal followed, thus necessitating this opinion.

Initially, we would observe that there appears to be a dearth of authority on the subject of restitution in welfare fraud cases vis-a-vis the statute of limitations. We could find no case directly addressing the issue.[6] For the following reasons, however, we be-

5. Defendant does not dispute that she illegally received the entire $6,075. However, the amount received between February 23, 1979, and May 12, 1980, the period within the statute of limitations was $2,831.91 in public assistance and $881 in food stamps for a total of $3,721.91. The amount received from February 10, 1978, to February 23, 1979, the period beyond the statute of limitations, was $1,945.18 in public assistance and $417 in food stamps for a total of $2,362.18.

6. Defendant has cited the case of *Commonwealth v. Stolis,* 311 Pa. Super. 195, 457 A.2d 562 (1983) in support of

lieve that the sentence of the court was proper.

Section 481 of the Public Welfare Code, which defendant admits violating and pursuant to which defendant was sentenced, provides in pertinent part as follows:

"(a) Any person who, either prior to, or at the time of, or subsequent to the application for assistance, by means of a wilfully false statement of misrepresentation, . . . secures . . . assistance, or federal food stamps, under this article shall be guilty of a misdemeanor, and upon conviction thereof, shall be sentenced to pay a fine not exceeding $1,000, or to undergo imprisonment not exceeding one year, or both, *and also shall be sentenced to make restitution of any monies he has received by reason of any such false statement. . . .*" (emphasis added).

In attempting to interpret statutory provisions, our Supreme Court in the case of *Commonwealth v. Lobiondo,* 501 Pa. 599, 462 A.2d 662 (1983), indi-

---

her position. We have read *Stolis* and it does not directly address the issue before this court. Rather, a footnote in *Stolis* makes an observation that "the amount of restitution [ordered by the sentencing court] reflects the period in which the statute of limitations had not run." Obviously, this footnote in *Stolis* is not controlling in the instant case.

Compare the case of *Flemister v. Commonwealth,* 317 Pa. Super. 267, 463 A.2d 1188 (1983), where the sentencing court ordered restitution in a welfare fraud case of $18,818. The charges stemmed from allegations that appellant, while receiving public assistance, concealed receipt of Social Security benefits and income earned by her dependent son. Although the facts in the case do not reveal whether the amount of restitution ordered was limited to the four-year statute-of-limitations period, one may make a resonable assumption that $18,818 in fraudulent welfare benefits would be paid over a period in excess of four years under the circumstances outlined in the opinion.

cated the following with regard to determining legislative intent:

"When called upon to interpret statutory provisions, we are guided by well-established principles of statutory construction. . . . A statute must be construed if possible to give effect to all of its provisions. . . . It is presumed that every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect; and if a statute contains its own definitions, the meaning of a term as defined at common law, or as construed under prior statute is not controlling. . . ." (citations omitted).

Moreover, the Statutory Construction Act, 1 Pa.C.S. § 1501 et. seq., provides as follows in section 1922:

"In ascertaining the intention of general assembly in the enactment of a statute, the following presumptions, among others, may be used:

"(1) That the General Assembly does not intend a result that is absurd . . . or unreasonable,

"(2) That the General Assembly intends to favor the public interest against any private interest."

Applying these principals to section 481(a) and the instant case, it is the very nature of welfare benefits that they are paid from the public treasury on a regular and continuing basis. After a person makes application for welfare benefits and is approved by D.P.W., benefits will be paid unless it is determined that for some reason the recipient no longer qualifies. If the welfare recipient makes false representations to a caseworker for the purpose of fraudulently receiving welfare benefits, whether these representations are made at an initial interview or at a requalification interview, the benefits will nevertheless be paid on a regular continuing basis until the fraud is discovered. The General As-

sembly obviously must have recognized the continuing nature of the crime of welfare fraud. It must, therefore, have realized that many people like defendant would continue to receive welfare benefits for periods of time well beyond four years based upon fradulent representations to caseworkers. The General Assembly in section 481(a) required that restitution be made in welfare fraud cases. To suggest that the General Assembly intended that the perpetrators of such fraud should not be required to pay back to the public treasury all of their ill-gotten gain simply because they were able to conceal their fraud for more than four years, is to suggest that the General Assembly intended an absurd and unreasonable result, a result which favors the private interest of defendant over the interest of the taxpaying public at large.

In addition, section 481(a) above recited, provides that a person committing welfare fraud "*shall be* sentenced to make restitution of *any moneys* . . . received by reason of *any such false statement*." We are satisfied that this language requires the court to order restitution of *any* monies received by defendant as a result of *any* false statement made for the purpose of receiving welfare benefits. Although defendant can only be prosecuted for fraud committed within the four-year statutory period, where such prosecution takes place and it becomes apparent because of the continuing nature of the offense that defendant received fraudulent benefits beyond the statutory period *any* monies so received *shall be* included in the restitution order. Defendant should not be permitted to be the recipient of a windfall in taxpayers' dollars while standing before the court admitting guilt, as in the instant case or after being found guilty by a judge or jury, of obtaining those same dollars through a fraud on the public treasury.

Next, defendant argues that the amount of restitution ordered was excessive in that it would require defendant to make restitution payments beyond the prescribed period of maximum imprisonment which could have been imposed, and that it does not take into consideration defendant's ability to make such restitution within the prescribed probationary period. Moreover, defendant contends that the order of restitution is controlled by 18 P.S. §1106(c)(2) because 62 P.S. §481(a) is "silent as to restitution." In this latter assertion, defendant is simply incorrect. It is abundantly clear that 62 P.S. §481(a) is anything but "silent as to restitution." The language *"and also shall be sentenced to make restitution of any moneys he has received by reason of any such false statement"* is mandatory. The statute requires that, regardless of any other terms of the sentence imposed, the sentencing court must order that defendant make restitution of any monies received by reason of any false statement.

Defendant is correct in stating that, generally, when restitution is ordered as a condition of probation, the sentencing court, in attempting to determine the appropriate amount of restitution, must take into consideration: (1) the extent of the injury suffered by the victim, (2) defendant's ability to make restitution, and (3) the type of payment that will best serve the needs of the victim and the capabilities of defendant. See *Commonwealth v. Fuqua*, 267 Pa. Super. 504, 407 A.2d 24 (1979). However, defendant is incorrect in asserting that we failed to take into consideration defendant's ability to make such restitution within the prescribed probationary period. To the contrary, a review of the record discloses that after imposing sentence, we made the following statement:

". . . If, during the course of probation you are not able, because of your financial condition, to make full and complete restitution, at the conclusion of the probationary period, the probation office may request an extension of the probationary period and give you additional time within which to make this resititution."

Not only is it clear from the foregoing that this court did consider defendant's financial condition when ordering restitution, the procedure used by the court to ensure full restitution was perfectly proper. See *Commonwealth v. Griffith,* 40 D.&C. 374, (1943).[7]

Under all of the circumstances, the sentence imposed upon Danita Miller was in accordance with the law.

---

7. The General Assembly codified this procedure in the 1982 amendments to the code. Section 481(c) of the code now provides in pertinent part as follows:

"Any person committing a crime enumerated in subsection (a) shall be ordered to pay restitution of any moneys he has received by reason of any false statement, misrepresentation, impersonation, failure to disclose required information, or fraudulent means. *Restitution ordered under this subsection may be paid in lump sum, by monthly installments or according to such other schedule as is deemed just by the sentencing court . . . , the period of time during which the offender is ordered to make restitution may exceed the maximum term of imprisonment to which the offender could have been sentenced for the crime of which he was convicted, if the sentencing court determines such period to be reasonable and in the interests of justice.* (emphasis added).